Case 8:10-cv-01974-SDM-TBM   Document 6   Filed 09/30/13   Page 1 of 7 PageID 184

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   Case No.   8:07-cr-99-T-23TBM
     8:10-cv-1974-T-23TBM

RAFAEL BUESA-HERRERA
_____/

**O R D E R**

Buesa-Herrera's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his conviction for both conspiring to possess with the intent to distribute and possessing with the intent to distribute cocaine while aboard a vessel. When the interdiction occurred the seizure was the largest cocaine seizure in maritime history. Buesa-Herrera was a member of the crew aboard the freighter. Buesa-Herrera and several other defendants pleaded guilty on the morning of trial and without the benefit of a plea agreement. Buesa-Herrera alleges that, because trial counsel was ineffective for not securing a plea agreement, he lost the opportunity for a lower sentence. Although admitting that the motion to vacate is timely (Doc. 4 at 4), the United States argues that the motion to vacate lacks merit.[1]

---

[1] Also, Buesa-Herrera moves (Doc. 5) for leave to amend his motion to vacate to include a claim based on *Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012). As discussed later, *Hurtado* is inapplicable.

# **FACTS**[2]

Jesus Ernesto Mondragon-Garcia and Jose Alonso Nunez-Gutierrez ("the two cartel members") were members of a Mexican drug cartel. They went to Panama, where they purchased the *Gatun* (a 330-foot, Panamanian-flagged, commercial freighter) and leased cargo containers. The two cartel members planned to use the *Gatun* to smuggle cocaine. They hired Francisco Paul Valdez-Gonzalez ("the captain"), an experienced sea captain, and agreed to pay him $100,000. The captain agreed to rendevous with go-fast boats in the Pacific Ocean, where cocaine would be loaded onto the *Gatun* for delivery to Mexican drug lords.

On March 15, 2007, the *Gatun* arrived in Cristobal, Panama, with the two cartel members, the captain, and other crew members aboard. The captain was also the supervisor of the entire crew, which consisted of three Panamanians and several Mexicans, including Buesa-Herrera.

Early in the morning on March 17, 2007, after the *Gatun* had traversed the Panama Canal the captain ordered the chief engineer to stop the engines. Several cocaine-laden go-fast boats approached the *Gatun*. The *Gatun*'s crew transferred the cocaine onto the *Gatun* and loaded it into two cargo containers. Thereafter, the two cartel members left the *Gatun* to return to Mexico and the *Gatun* resumed its voyage.

---

[2] This summary of the facts, derived from the United States' response to the petition (Doc. 4 at 2-4), is fully supported by the pre-sentence report, which was adopted at sentencing without an objection to the facts. (Doc. 310 at 38)

A United States Coast Guard vessel spotted the *Gatun* in international water. With the permission of Panamanian authorities, the Coast Guard boarded the *Gatun* and secured the crew. A search revealed more than 15,000 kilograms (more than 16 tons) of cocaine in two cargo containers. The Coast Guard took custody of the Mexicans and Panamanian authorities took custody of the Panamanians.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Buesa-Herrera claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Buesa-Herrera must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Buesa-Herrera must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Although the *Strickland* standard controls a claim that counsel was ineffective for recommending that a client plead guilty, *Hill v. Lockhart*, 474 U.S. 52 (1985), *Agan v. Singletary*, 12 F.3d 1012 (11th Cir. 1994), the quantum of evidence needed to

prove both deficient performance and prejudice is different. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decided to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59.

Two of the defendants pleaded guilty before the day of trial and the remaining eight defendants, including Buesa-Herrera, pleaded guilty the morning of trial, but none of the ten defendants benefitted from a plea agreement. Contrary to the usual basis for prejudice as described in *Hill* (that counsel's ineffectiveness caused the defendant to plead guilty) Buesa-Herrera claims that counsel was ineffective for not securing a plea agreement. "But there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial. It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Because there is no constitutional right to a plea agreement, counsel cannot be ineffective for not securing an agreement. Additionally, Buesa-Herrera cites no evidence indicating

that, earlier than the morning of trial, he advised his counsel that he desired a plea agreement.

Lastly, Buesa-Herrera moves (Doc. 5) for leave to amend his motion to vacate to include a claim based on *Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012), which holds that "[b]ecause drug trafficking is not a violation of customary international law, . . . Congress exceeded its power, under the Offences Clause, when it proscribed the defendants' conduct in the territorial waters of Panama." 700 F.3d at 1258  The pre-sentence report discloses that Buesa-Herrera's vessel was in international water (approximately twenty nautical miles southwest of Isla De Coiba, Panama). Because "international water" is all area beyond twelve miles from land, *United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003), Buesa-Herrera's vessel was not in a country's territorial water and, as a consequence, *Hurdao* is inapplicable. Buesa-Herrera's motion for leave to amend is **DENIED** as futile.

Accordingly, the motion to vacate under 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.  The clerk shall enter a judgment against Buesa-Herrera and close this case.

### DENIAL OF BOTH CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Buesa-Herrera is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court

must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Buesa-Herrera must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate the merits of the claims, Buesa-Herrera cannot meet *Slack*'s prejudice requirement. 529 U.S. at 484. Finally, Buesa-Herrera is not entitled to appeal *in forma pauperis* because he is not entitled to a certificate of appealability.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Buesa-Herrera must pay the full $455 appellate filing fee without installments unless the circuit court allows Buesa-Herrera to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on September 30, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE